STATE OF NORTH CAROLINA v. JERRY WAYNE FLETCHER

No. 352A87

(Filed 2 June 1988)

1. **Constitutional Law § 34; Criminal Law § 26.5— rape, incest, taking indecent liberties—convictions not double jeopardy**

   It was not double jeopardy for a defendant to be punished for convictions of rape, incest, and taking indecent liberties with a minor when all the convictions were based on one incident.

2. **Constitutional Law § 30— sexual abuse of child—motion for psychological examination of child—denied—no error**

   The trial court did not err in a prosecution for first degree rape, incest, and taking indecent liberties with a child by denying defendant's motion to continue and to allow an examination of the child by a clinical psychologist.

State v. Fletcher

3. **Witnesses § 1.2— sexual abuse of child—four-year-old victim—competent to testify**

   The trial court did not err in a prosecution for first degree rape, incest, and taking indecent liberties with a child by allowing testimony from the vic- tim where the child had testified at the *voir dire* hearing that she had told a lie in the past and was uncertain about some times and dates. The fact that the child may not have told the truth in the past and was uncertain about some times and dates does not prevent her from being a competent witness. N.C.G.S. § 8C-1, Rule 601.

4. **Witnesses § 1.2— child rape victim—voir dire hearing—cross-examination question—objection sustained**

   The trial court did not err during a *voir dire* to determine competency of a child rape victim to testify by sustaining an objection to a question asked of the child as to why she wasn't telling the truth. The sustaining of the objec- tion could not have affected the determination of the court as to whether the child was capable of expressing herself and whether she was capable of understanding the duty of a witness to tell the truth.

5. **Rape and Allied Offenses §§ 4, 19— rape, incest, taking indecent liberties with a child—use of anatomically correct dolls—no error**

   The trial court did not err in a prosecution for rape, incest, and taking in- decent liberties with a child by allowing the child to use anatomical dolls to il- lustrate her testimony because there was no hearsay involved in the child's testimony; the use of anatomical dolls is not inherently open to suggestiveness if the examiner is other than an expert; there is nothing technically complex about the use of anatomical dolls and there is no need to have an expert evaluate the use of such dolls or explain it to a jury; and the practice is wholly consistent with existing rules governing the use of photographs and other items to illustrate testimony.

6. **Criminal Law § 73.2— sexual abuse of child—the use of residual hearsay exception—no error**

   The trial court did not err in a prosecution for first degree rape, incest, and taking indecent liberties with a child by admitting numerous hearsay statements under the residual hearsay exception of N.C.G.S. § 8C-1, Rule 803(24) without required findings because none of defendant's exceptions relates to any evidence admitted under Rule 803(24).

7. **Criminal Law § 50— sexual abuse of child—testimony of psychologist who had not examined child excluded—no error**

   The trial court did not err in a prosecution for first degree rape, incest, and taking indecent liberties with a child by excluding the testimony of a psychologist who had not examined the victim as to the sexual awareness and habits of young children, the ability of children to remember, and typical and atypical reactions of sexually abused young children because there was no evidence of the reaction of the child to the incident in this case and the doctor's testimony would not be helpful to the jury in reaching a decision. N.C.G.S. § 8C-1, Rule 702.

8. **Rape and Allied Offenses §§ 5, 19— rape, incest, taking indecent liberties with a child—evidence sufficient**

   The trial court did not err by denying defendant's motions to dismiss charges of first degree rape, incest, and taking indecent liberties with a child where the child testified that defendant "stuck his ding dong up my po po."

9. **Rape and Allied Offenses § 6; Criminal Law § 120— rape—instruction on mandatory sentence—no prejudice**

   There was no prejudice in a prosecution for first degree rape, incest, and taking indecent liberties with a child where the court instructed the jury that at least one of the sentences carried a mandatory sentence of life imprisonment but that the jury's concern was not that of punishment because, assuming error, the jury would be more reluctant to return a verdict of guilty if they thought the defendant would be sentenced to life imprisonment instead of a lesser term.

10. **Rape and Allied Offenses § 6— rape, incest, taking indecent liberties with a child—instruction on vaginal intercourse—no error**

    The trial court did not err in a prosecution for first degree rape by instructing the jury that it is not necessary that the vagina be entered or that the hymen be ruptured and that the entering of the vulva or labia is sufficient. The instruction was taken verbatim from *State v. Murray*, 277 N.C. 197, and it is not an expression of opinion for the court to make a correct statement of the law however weak the evidence may be.

11. **Criminal Law § 138— incest and taking indecent liberties—aggravating and mitigating factors—no error**

    The trial court did not err when sentencing defendant for incest and taking indecent liberties with a minor by using only one form to find the factors in aggravation and mitigation where it was clear that the court intended to make the findings listed on the form applicable to both convictions.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a life sentence entered by *Kirby, J.*, at the 2 April 1987 Session of Superior Court, YADKIN County. The defendant's motion to bypass the Court of Appeals as to the lesser sentences was allowed pursuant to N.C.G.S. § 7A-31(b). Heard in the Supreme Court 15 March 1988.

Defendant was tried for first degree rape, incest, and taking indecent liberties with a child. Evidence presented at trial tended to show the four-year-old victim lived with her aunt and uncle. During the week of 12 October 1986 she had been visiting defendant, her father. On Saturday, 18 October 1986, defendant brought her back to her aunt and uncle's house. That evening as her aunt was giving her a bath, the child did not want her aunt to wash

her "po po" because it hurt. When her aunt asked why it hurt, she told her that her father had put his "ding dong" in it.

Her aunt took her to the emergency room, where Dr. Jolly, a resident in family medicine, examined her. When he began examining her genitals, she became combative and screamed. When he asked her why she was upset, she replied that her father had messed with her there. He found her genital area to be red and swollen. There was bruising and redness up to the hymen, but the hymen itself had not been penetrated.

When Dr. Michelle Massey Bruier, a resident in gynecology, told the child she was going to examine her in the genital area, she again started crying. She told Dr. Bruier that her father had put his thing down there. Dr. Bruier found her genitals red and swollen, with lacerations at the entrance to her vagina.

The child later gave similar statements to Officer Brinsfield of the Winston-Salem Police Department and Lottie Piscopo, a social worker. She also told Ms. Piscopo that her father had "peed" on her vaginal area.

The child testified to the same events at trial, stating "[h]e stuck his 'ding dong' up my 'po po' " and "[h]e stuck his finger in there too." She demonstrated the positions of the "ding dong" and "po po" on anatomically correct dolls. She testified that she had felt it inside, and had cried because it hurt.

Defendant denied having committed the offenses. He admitted prior convictions of driving under the influence and assault on a female. The defendant was convicted of all the charges. He was sentenced to life in prison for the conviction of rape, fifteen years for the conviction of incest, and ten years for the conviction of taking indecent liberties with a minor. The defendant appealed.

*Lacy H. Thornburg, Attorney General, by Marilyn R. Mudge, Assistant Attorney General, for the State.*

*Mary K. Nicholson and Bruce C. Fraser for defendant appellant.*

WEBB, Justice.

[1] In his first assignment of error the defendant, relying on *State v. Freeland*, 316 N.C. 13, 340 S.E. 2d 35 (1986), argues that

he was placed in double jeopardy because he was convicted of three separate offenses based on the same act. In *Freeland* we held that a defendant could not be sentenced for first degree kidnapping and a sexual assault if it was necessary to prove the sexual assault in order to convict the defendant of first degree kidnapping. We held that the intent of the General Assembly in that case was that the defendant not be punished for both offenses. In *State v. Etheridge*, 319 N.C. 34, 352 S.E. 2d 673 (1987), a case which is virtually on all fours with this case, we held that it was not double jeopardy for a defendant to be punished for convictions of rape, incest, and taking indecent liberties with a minor when all the convictions were based on one incident. We are bound by *Etheridge* to overrule this assignment of error.

[2] Defendant next assigns error to the court's denying his motion to continue and to allow an examination of the child by Dr. Lewis Bradbard, a clinical psychologist. The record shows that on 30 April 1987 the defendant filed a motion which recited that a district court judge in Forsyth County had signed an order requiring the minor child to submit herself for examination by Dr. Bradbard of Salem Psychiatric Associates on 26 April 1987 and the district court judge had rescinded this order. The defendant prayed the court that the case be continued and an examination be allowed of the child. The court denied this motion.

The defendant has cited no authority for the proposition that a witness for the State may be ordered to submit to an examination by a psychologist or a psychiatrist. No right of discovery by the defendant in a criminal case existed at common law. *State v. Davis*, 282 N.C. 107, 191 S.E. 2d 664 (1972). If the defendant had the right to have the prosecuting witness examined by a psychologist such a right must be pursuant to a statute. We can find no such right given by statute. In *State v. Pinch*, 306 N.C. 1, 292 S.E. 2d 203 (1982), we held that the State did not have to make its witnesses available for interviews with a medical expert who had been appointed to aid the defendant. We hold it was not error to deny the defendant's motion for a continuance and for the examination of the child by a psychologist.

[3] The defendant next assigns error to the court's holding that the four year old was competent to testify. The court conducted a voir dire hearing before allowing testimony by the child. The

child testified at the voir dire hearing that she knew what it meant to tell the truth and she knew it was bad to tell a lie. She promised to tell "just what had happened and nothing else." She also testified she had told a lie in the past. She was uncertain about some times and dates. The defendant contends that in light of the child's testimony that she had told a lie in the past and her uncertainty as to times and dates, the child should not have been qualified as a witness. N.C.G.S. § 8C-1, Rule 601 provides in part:

(a) General Rule.—Every person is competent to be a witness except as otherwise provided in these rules.

(b) Disqualification of witness in general.—A person is disqualified to testify as a witness when the court determines that he is (1) incapable of expressing himself concerning the matter as to be understood, either directly or through interpretation by one who can understand him, or (2) incapable of understanding the duty of a witness to tell the truth.

We hold that the court did not err in holding the witness was competent to testify. The court was not required from the voir dire testimony to find that the child was incapable of expressing herself concerning the case or was incapable of understanding the duty of a witness to tell the truth. The fact that the child may not have told the truth in the past and was uncertain about some times and dates does not prevent her from being a competent witness. *See State v. Hicks*, 319 N.C. 84, 352 S.E. 2d 424 (1987); and *State v. McNeely*, 314 N.C. 451, 333 S.E. 2d 738 (1985). This assignment of error is overruled.

[4] The defendant also assigns error to the sustaining of an objection to a question asked of the child during the voir dire hearing. The following colloquy occurred on cross-examination:

Q. Did Nannie tell you? You are shaking your head, yes. All right, when you told me a minute ago nobody told you, that was a lie wasn't it, that was not the truth?

A. (Shakes head up and down)

Q. Why weren't you telling me the truth?

MR. HARDING: Objection, Your Honor.

COURT: Sustained.

The witness was questioned extensively before and after this question as to whether she was telling the truth. The purpose of the voir dire hearing was for the court to be able to determine whether the child was capable of expressing herself and whether she was capable of understanding the duty of a witness to tell the truth, upon which her competency as a witness depended. The sustaining of the objection to this question could not have affected this determination by the court. This assignment of error is overruled.

[5] Defendant next contends the trial court erred in allowing the child to use anatomical dolls to illustrate her testimony. Defendant argues that this was error because "this use of anatomical dolls was tendered pursuant to Rule 803(24) of the North Carolina Rules of Evidence . . . and the court failed to make proper findings of trustworthiness . . .," "[t]he use of such dolls by other than an expert is certainly open to suggestiveness on the part of the examiner," and "[a]t no time did any expert evaluate this technically complex procedure and give the jury an opinion as to the use and meaning of anatomical dolls."

We find defendant's argument to be meritless. Clearly, the use of the dolls was not tendered pursuant to Rule 803(24), which allows certain hearsay testimony, because no hearsay was involved in the child's testimony. We cannot find that the use of anatomical dolls is inherently open to suggestiveness by the examiner, if the witness is "other than an expert." Finally, we see no need to have an expert evaluate the use of anatomical dolls or explain it to a jury; there is nothing technically complex about it. In fact, it is precisely because the use of the dolls can be readily understood by everyone involved, especially the child, that they are so often employed in the investigation of child abuse. This Court has heard several cases in which anatomical dolls were used by children to illustrate their testimony and we have never disapproved of the practice. *See, e.g., State v. Watkins*, 318 N.C. 498, 349 S.E. 2d 564 (1986); *State v. DeLeonardo*, 315 N.C. 762, 340 S.E. 2d 350 (1986); and *State v. Smith*, 315 N.C. 76, 337 S.E. 2d 833 (1985). The practice is wholly consistent with existing rules governing the use of photographs and other items to illustrate testimony. It conveys the information sought to be elicited, while it permits the child to use a familiar item, thereby making him more comfortable. Defendant's assignment of error is overruled.

State v. Fletcher

**[6]** The defendant next contends the court erred in admitting numerous hearsay statements under the residual hearsay exception established by N.C.G.S. § 8C-1, Rule 803(24), without placing in the record the specific findings required by *Smith*, 315 N.C. 76, 337 S.E. 2d 833. The defendant supports this assignment of error with sixteen exceptions in the record. An examination of the record reveals that not one of these exceptions relates to any evidence admitted under Rule 803(24). Ten of the exceptions relate to evidence admitted to corroborate a witness' testimony, three exceptions relate to evidence admitted under the medical diagnosis exception established by N.C.G.S. § 8C-1, Rule 803(4), one exception relates to a ruling on the relevance of testimony and two of the exceptions are to no ruling by the court. This assignment of error is overruled.

**[7]** The defendant assigns error to the exclusion of certain testimony of Dr. Lewis Bradbard, a clinical psychologist. The defendant called Dr. Bradbard as a witness and proposed that he testify pertaining to three subjects. These subjects were (1) the sexual awareness and habits of young children, (2) the ability of children to remember, and (3) typical and atypical reactions of sexually abused young children. Dr. Bradbard had not examined the child in this case and no evidence had been offered as to psychological difficulties the child may have had as the result of her experience. The court refused to allow the witness to testify to the reactions of sexually abused young children.

An expert witness is allowed to testify to facts within his knowledge if it will assist the jury to understand the evidence or to determine a fact in issue. *State v. Kennedy*, 320 N.C. 20, 357 S.E. 2d 359 (1987). N.C.G.S. § 8C-1, Rule 702 might be read as requiring that such testimony be in the form of an opinion. We do not believe this is the case. Rule 702 is a rule of admission which allows opinion evidence in certain cases. If a witness, whether or not an expert, has knowledge of facts which would be helpful to a jury in reaching a decision, he may testify to such relevant facts.

In this case we hold it was not error to exclude the testimony of Dr. Bradbard as to the reactions of sexually abused children. There was no evidence of the reaction of the child to the incident in this case and Dr. Bradbard's testimony would not be helpful to the jury in reaching a decision.

[8]  The defendant next assigns error to the denial of his motion to dismiss. He bases this assignment of error on what he contends is the lack of proof of vaginal intercourse. He contends that the child did not testify as to penetration of her vagina by the defendant's penis. The child testified that the defendant "stuck his ding dong up her po po." She demonstrated, using male and female dolls, that the "po po" is a vagina and the "ding dong" is a penis. This is substantial evidence from which the jury could find the defendant engaged in vaginal intercourse with his daughter. *See State v. Bruce*, 315 N.C. 273, 337 S.E. 2d 510 (1985). This assignment of error is overruled.

[9]  The defendant next assigns error to the charge of the court. The court charged the jury in part as follows:

> You are aware that we are trying three counts of a bill of indictment wherein the defendant is accused of first degree rape, taking indecent liberties with a minor, and with incest. You are aware of the possible punishments for each of these offenses and you realize that at least one of the sentences carries a mandatory sentence of life imprisonment. I instruct you that it is your duty to find the true facts of this case and your concern is not that of punishment but simply the finding of the facts. The sentence and punishment only comes into being when the defendant has been found guilty, and at this point he is presumed to be innocent.

The defendant argues that it was error for the court to tell the jury what is the punishment for rape. In *State v. Rhodes*, 275 N.C. 584, 169 S.E. 2d 846 (1969), Justice, later Chief Justice, Sharp said:

> In the absence of some compelling reason which makes disclosure as to punishment necessary in order "to keep the trial on an even keel" and to insure complete fairness to all parties, the trial judge should not inform the jurors as to punishment in noncapital cases. If information is requested he should refuse it and explain to them that punishment is totally irrelevant to the issue of guilt or innocence. When, however, such information is inadvertently given, the error will be evaluated like any other.

*Id.* at 592, 169 S.E. 2d at 851. The jury argument was not recorded in this case and we cannot determine whether the court's re-

marks were in response to a statement by counsel. We do not know whether the judge, for this reason or any other reason, was trying to "keep the case on an even keel." Assuming it was error to make the remark, we hold it was error favorable to the defendant. The jury would be more reluctant to return a verdict of guilty if they thought the defendant would be sentenced to life imprisonment instead of a lesser term. *See State v. Washington*, 283 N.C. 175, 195 S.E. 2d 534 (1973), *cert. denied*, 414 U.S. 1132, 38 L.Ed. 2d 757 (1974); and *State v. Hairston*, 121 N.C. 579, 28 S.E. 492 (1897). This assignment of error is overruled.

[10] The defendant contends there was error in the jury instruction on vaginal intercourse. The court charged as follows:

First of all, the State must prove that the defendant engaged in vaginal intercourse with [the child]. Vaginal intercourse is penetration, however slight, of the female sex organ by the male sex organ. The actual emission of semen is not necessary. It is not necessary that the vagina be entered or that the hymen be ruptured. The entering of the vulva or labia is sufficient.

The defendant argues that the last two sentences are in error. It appears that these two sentences were taken verbatim from our opinion in *State v. Murray*, 277 N.C. 197, 176 S.E. 2d 738 (1970). Nevertheless, the defendant argues that the evidence of penetration was so slight that for the court to give this charge amounted to an expression of opinion by the court on the strength of the evidence. However weak the evidence may be, it is not an expression of an opinion for the court to make a correct statement of the law. *State v. Barnes*, 307 N.C. 104, 296 S.E. 2d 291 (1982), upon which the defendant relies, is not helpful to him. In *Barnes*, this Court held that under the evidence in that case it was error not to define intercourse. In this case, the court defined intercourse. This assignment of error is overruled.

[11] Finally the defendant assigns error to what he contends is the failure of the court to separately support with findings of aggravating and mitigating circumstances the sentences for incest and taking indecent liberties with a minor. In *State v. Ahearn*, 307 N.C. 584, 598, 300 S.E. 2d 689, 698 (1983), we said:

We therefore hold that in every case in which the sentencing judge is required to make findings in aggravation and mitigation to support a sentence which varies from the presumptive term, each offense, whether consolidated for hearing or not, must be treated separately, and separately supported by findings tailored to the individual offense and applicable only to that offense.

In this case the court used only one form to find the factors in aggravation and mitigation. At the top of the form is typed "Charge of Incest & Taking Indecent Liberties With Child." On the judgment and commitment form for each offense there is a recital that the court makes findings set forth on the attached findings of factors in aggravation and mitigation of punishment. Although there is one form upon which findings in aggravation and mitigation are listed, it is clear that the court intended to make them applicable to both convictions. *See State v. Hall,* 81 N.C. App. 650, 344 S.E. 2d 811, *cert. dismissed,* 318 N.C. 510, 349 S.E. 2d 868 (1986). We hold the court complied with the rule of *Ahearn.*

No error.